RANSOM SHOVE AND SOPHIA SHOVE

v.

ANN L. ROWE.

*Gift—Loan—Evidence.*

1. The testimony of any witness should not be rejected unless the witness has wilfully sworn falsely, and such evidence is uncorroborated by other competent evidence in the case, and in that event the jury may disregard it.

2. Unimpeached evidence must not be rejected by the jury, but must be weighed in connection with all other evidence in the case, and if it can not be reconciled with the other evidence which the jury finds to be truthful, it must give way to the better evidence.

3. In an action brought to recover a certain sum alleged to have been loaned defendants, they contending it to be a gift, this court declines to interfere with the judgment for the plaintiff.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Whiteside County; the Hon. JOHN D. CRABTREE, Judge, presiding.

Mr. J. E. McPHERRAN, for appellants.

Messrs. F. E. ANDREWS and JOHN G. MANAHAN, for appellee.

LACEY, P. J. This was a suit brought by appellee against the appellants in assumpsit to recover the sum of $1,000 and interest accrued thereon, claimed to have been loaned by her to them.

The defense set up by the appellants was, that the sum of money so claimed to be due, was a gift by appellee to them, and that in no event can the appellant Ransom Shove be liable; for whether a gift or a loan, he had no connection with it, the loan or gift being to his wife, Sophia Shove.

It appears that appellee was a somewhat aged lady, being about seventy-one years old, and her husband some eight years her senior, and that she and her husband came to Illinois in 1856, and knew the appellants in Pennsylvania, where they lived prior thereto.

Sophia Shove lived with appellee in Pennsylvania for five or six years, and continued to live with her and made her house her home in this State. Appellee brought $2,700 with her.

In January, 1886, appellee delivered to appellant, or Sophia Shove, a certificate of deposit for $1,000, and as testified to by her, with the understanding that appellants were to pay her interest on it at seven per cent and appellee and her husband were to live with appellants; but in case she did not want to stay, the money was to be refunded to her with seven per cent interest. Appellee and her husband lived with the appellants from the last of February, 1886, to June 3, 1887, and stayed no longer because of alleged unpleasant treatment on the part of Mrs. Shove. At any rate they left her house. There were a good many circumstances developed in the evidence not neces-

sary to state, but suffice it to say that the appellants posi-
tively testified that the money was a gift which had long been
contemplated, and was made to Mrs. Shove, and Mr. Shove
had nothing to do with it.    Neither party was corroborated
by other witnesses, except the testimony of a Mrs. Baker,
who testified that appellee told her that she had given this
money to appellant, Sophia Shove, but this conversation was
in such a way that it was not necessarily entitled to very
much weight, and was very liable to be misunderstood by Mrs.
Baker.    There were several circumstances in evidence in cor-
roboration of appellee, such as that appellants allowed her the
interest on the amount of money received by them on appel-
lee's board account at the rate of seven per cent per annum,
amounting to $70, after they had had the money one year.
This was attempted to be explained by appellants by testify-
ing that this was paid to appellee to keep peace in the family
and done at Mr. Shove's request, made to his wife, who
opposed it at the time.

Upon the issue then, of a gift, the burden of proving which
rested on appellants, the jury found for appellee, and we can
not say that the finding is so against the weight of the evidence
as that we should set it aside, and the jury found against the
testimony and explanation of the appellants, and we are unable
to say it was not supported by the evidence.

We will now consider the other issue, as to whether the loan,
if any, was made to Mrs. Shove, or to Shove and his wife
jointly.    They both, in opposition to the testimony of appellee,
testify that Ransom Shove had nothing to do with it.    But
the evidence shows that the latter took the certificate of de-
posit and loaned the amount it called for to one Lee Baird, who
gave his note to him for the amount, payable to R. Shove, and
that Baird got the money from the bank on the certificate.
The statement of the wife that she got a portion of the iden-
tical money in her own right and spent it seems not to have
been correct.    No separate account appears ever to have been
kept by Shove with his wife, in regard to the money.    He
seems to have treated it as his own, and as both Shove and his
wife receipted to appellee, sometimes the one and sometimes
the other, for the board which was paid in interest, the jury, we

Shove v. Rowe.

think, was authorized to find that the money was borrowed on joint account of appellants. We therefore do not feel at liberty to set the verdict aside for want of evidence to support it.

All the appellee's instructions, seven in number, are objected to as erroneous, and we are asked to hold them bad for several reasons urged. We have examined them all carefully, and see no substantial error in them. They appear to be such instructions as are usually given in such cases as this, and in connection with those of appellants, given by the court, to present the issues in the case fairly, though one or two of the appellee's instructions appear to be a little obscure. There is no error in the modification by the court of any of appellants' given instructions, nor in the refusal to give their 12th refused instruction. This was intended for an instruction on the question of a proposed impeachment of appellee, and recited certain supposed statements made to Mrs. May Baker by her, which tended to contradict her evidence given in court. The instruction then told the jury if it believed they were made, and the statements were contrary to what appellee had sworn to on the trial, then such statements would tend to impeach her and the jury would be justified in rejecting her testimony, if they believed, from all the evidence, her testimony was untrue.

The last clause of the instruction, with a little modification, might be good law. The testimony of any witness should not be rejected unless the witness has wilfully sworn falsely and such evidence is uncorroborated by other competent evidence in the case, and in that event the jury may disregard it.

Unimpeached evidence must not be rejected by the jury, but must be weighed in connection with all other evidence in the case, and if it can not be reconciled with the other evidence which the jury finds to be truthful, of necessity it would have to give way to the better evidence. This was not the theory of the instruction. It was intended, and the jury would understand it to be an impeaching instruction. It was erroneous as offered and was properly refused.

We have now considered all the points made by the attorney for appellants and find no sufficient error to reverse the judgment. It is therefore affirmed.

*Judgment affirmed.*